UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAWRENCE C. TRIMM, III,

                              Plaintiff,

v.                                              7:15-CV-1006
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY LAW FIRM                          LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                     SANDRA GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 28.) This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Lawrence C.

Trimm, III ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 18, 27.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 13, 1987. (T. 51.) He completed the 11th grade. (T. 195.) Generally, Plaintiff's alleged disability consists of learning disability, anger problems, speech impairment, and comprehension impairments. (T. 194.) His alleged disability onset date is September 26, 2010. (T. 51.) He has no past relevant work.

### B. Procedural History

On November 4, 2010, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 51.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 16, 2011, Plaintiff appeared before the ALJ, John P. Ramos. (T. 27-50.) On December 2, 2011, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-26.) On January 14, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court. In a decision dated June 4, 2014, the case was remanded to the Commissioner for further proceedings in accordance with sentence four of section 205(g) of the Social Security Act. (T. 417-428.) On June 21, 2014, the AC vacated and remanded the December 2, 2011 decision for further evaluation. (T. 349.) On November 20, 2014, Plaintiff again appeared before ALJ Ramos. (T. 346-

367.)  On January 14, 2015, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 346-367.)  On July 20, 2015, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 334-338.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's January 14, 2015 Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 351-361.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 4, 2010, the date of the application.  (T. 351.)  Second, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, depression, and attention deficit hyperactivity disorder ("ADHD").  (T. 352.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.   (T. 353-355.)   Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with additional non-exertional limitations.  (T. 355.)  The ALJ determined that Plaintiff had the ability to:

> understand and follow simple instructions and directions; perform simple one and two step rote tasks with intermittent supervision and independently; maintain attention/concentration for simple one or two step rote tasks; regularly attend to a routine and maintain a schedule; and work in proximity to other coworkers, but he should only have limited, superficial contact with them and no contact with the public.  He can complete simple one and two-step rote tasks without the need for frequent supervision and interact with supervisors on an intermittent basis throughout the workday, and handle reasonable levels of simple work-related stress in that he can make simple decisions directly related to the completion of his tasks.

(*Id.*)  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 360-361.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to find that Plaintiff suffers from a listing level intellectual deficit.  (Dkt. No. 18 at 10-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ failed to apply the proper standards for evaluating the medical opinion evidence of Plaintiff's treating providers.  (*Id.* at 15-19.)  Third, Plaintiff argues that the ALJ failed to properly apply the special technique in his assessment of Plaintiff's mental disorders.  (*Id.* at 19-23.)  Fourth, and lastly, Plaintiff argues that the ALJ erred in his step five determination.  (*Id.* at 23-25.)

### B.  Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues Plaintiff's impairments were not of the severity to meet the requirements of section 12.05C of the Listing of Impairments.  (Dkt. No. 27 at 5-11 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly reviewed Plaintiff's RFC and properly evaluated the opinion of the treating physicians.  (*Id.* at 11-16.)  Third, Defendant argues that the ALJ properly considered the record in assessing Plaintiff's mental impairments.  (*Id.* at 16-17.)  Fourth, and lastly, Defendant argues that the ALJ's step five finding was supported by substantial evidence.  (*Id.* at 17-19.)

## III.  RELEVANT LEGAL STANDARD

## A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.     ANALYSIS**

**A.     The ALJ's Step Three Determination**

If an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at § 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at § 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove his impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at § 416.920(e).

Listing 12.05 requires, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05. The requirements of paragraph C are met if the plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70

and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*

The ALJ determined that Plaintiff's mental impairment did not meet the criteria of Listing 12.05 because he did not suffer from deficits in adaptive functioning.  (T. 354.) In making his determination, the ALJ relied on evidence in the record indicating that Plaintiff did not have significant limitations in communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health or safety.  (*Id.*)  The ALJ further concluded that Plaintiff's January 1996 IQ scores were not sufficiently current for an accurate assessment and the record indicated that his scores "maybe an under assessment." (*Id.*)

As an initial matter, Plaintiff argues that the ALJ erred in referring to Plaintiff's intellectual impairment as "borderline intellectual functioning" instead of "mild mental retardation."  (Dkt. No. 18 at 10 [Pl.'s Mem. of Law].)  Plaintiff's argument is without merit.  The Social Security Administration replaced the term "mental retardation" with "intellectual disability" in August of 2013.  *Change in Terminology: "Mental Retardation" to "Intellectual Disability"*, 78 Fed. Reg. 46499 (Aug. 1, 2013) ("The term 'intellectual disability' is gradually replacing the term 'mental retardation' nationwide. Advocates for individuals with intellectual disability have rightfully asserted that the term 'mental retardation' has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it.").  Therefore, the ALJ did not err his use of the term "intellectual functioning" when

referring to Plaintiff's disability because he was using the term preferred by the Social Security Administration.

Plaintiff next argues that the ALJ "unfairly import[ed] additional requirements into the listing" by requiring that Plaintiff demonstrate that he had deficits in adaptive functioning.  (Dkt. No. 18 at 13 [Pl.'s Mem. of Law].)  However, the introductory paragraph of Listing 12.05 contains a threshold requirement that Plaintiff must meet before the ALJ analyzes the criteria listing in Paragraphs A through D.

According to Listing 12.05, "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R. Pt. 404, Subpt. P., App'x. 1, § 12.05.  "If [an] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [in Paragraphs A through D, the ALJ] will find that [the] impairment meets the Listing."  20 C.F.R. Pt. 404, Subpt. P., App'x. 1, § 12.00.

Before an ALJ reaches the criteria in Paragraphs A through D, a plaintiff must meet the threshold requirement of having cognitive limitations and deficits in adaptive functioning initially manifesting before age 22.  *Burnette v. Colvin*, 564 Fed.Appx. 605, 607 (2d Cir. 2014); *Talavera v. Astrue*, 697 F.3d 145, 153 (2d. Cir. 2012); *Hooper v. Colvin*, No. 15-CV-6646, 2016 WL 4154701 (S.D.N.Y. Aug. 5, 2016).  Adaptive functioning refers to a plaintiff's "ability to cope with the challenges of ordinary everyday life." *Talavera*, 697 F.3d at 153 (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir.2007)) (internal alterations omitted).

Courts have held that a plaintiff who "is able to satisfactorily navigate activities such as living on [his] own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction ... does not suffer from deficits in adaptive functioning." *Id.* (internal quotation marks and alterations omitted). Therefore, contrary to Plaintiff's contentions, the ALJ did not add additional requirements to the Listing, instead the ALJ properly applied the threshold criteria of the Listing which requires that Plaintiff have deficits in adaptive functioning.

Plaintiff then argues that the ALJ failed to properly assess the record regarding his deficits in adaptive functioning. (Dkt. No. 18 at 14-15 [Pl.'s Mem. of Law].) In concluding that Plaintiff did not have deficits in adaptive functioning the ALJ relied on evidence in the record showing that Plaintiff was able to attend to his personal needs without any difficulties, cook, clean, do laundry, go shopping, drive, engage in leisure activities, travel independently, engage in work activity, go fishing, go camping, and play video games. (T. 354.) The ALJ also relied on records that indicated Plaintiff lived with a significant other and was described as pleasant and cooperative by providers. (*Id.*) The ALJ further reasoned that Plaintiff considered applying for temporary assistance benefits and VESID. (*Id.*)[1] In addition, the ALJ noted that Plaintiff was classified as "speech impaired" while at school and not "intellectually disabled." (*Id.*)

Indeed, Plaintiff indicated in his Function Report that he was able to care for pets, care for his personal hygiene, prepared simple meals, was able to do laundry and mow, could go to the store, watched TV, played on the computer, fished, and socialized. (T. 47, 203-210.) Plaintiff reported to consultative examiner, Dennis Noia, Ph.D., that he was able to: dress, bathe, and groom himself; cook and prepare food; do general

---

[1] VESID is an adult career and continuing education service. http://www.acces.nysed.gov/

cleaning; manage money, but "does not budget well;" drive; and watch TV, play video games, and listen to the radio. (T. 253.) Plaintiff informed a provider, and testified at the hearing, that he enjoyed fishing, camping, and playing video games. (T. 44, 586.) Plaintiff also worked full time for a company as a groundskeeper; however, the job ended because the company went bankrupt, not due to Plaintiff's mental impairments. (T. 45.) Plaintiff also worked in the fast food industry; however, Plaintiff quit because he was not content with his hours. (T. 288.) Also, the record indicated that Plaintiff was not interested in working because he was concerned it would affect the outcome of his SSI application or because he lacked confidence, not because he was mentally unable to maintain employment. (T. 295, 297, 332, 572, 574.) Elsewhere the record indicated that Plaintiff was looking for employment and wanted to work. (T. 314, 326, 316, 325, 326.)

In support of his argument that he had deficits of adaptive functioning, Plaintiff relies on his receipt of childhood SSI benefits. (Dkt. No. 18 at 12 [Pl.'s Mem. of Law].) As an initial matter, the standard to determine disability for receipt of childhood benefits is different than the standard to determine disability for adult SSI benefits.[2] Therefore,

_____

[2]     An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).
        By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).
        The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

although a plaintiff may have received childhood SSI benefits, that does not

automatically qualify a plaintiff for adult SSI benefits.  However, Plaintiff's argument has

merit insofar that he argues that his attendance in special education classes and an

education pursuant to an IEP are factors indicative of deficits in adaptive functioning.

*Lyons v. Colvin*, No. 7:13-CV-00614, 2014 WL 4826789, at *9 (N.D.N.Y. Sept. 29, 2014)

(collecting cases).

Courts have found attendance in special education classes, failure to complete

school before graduation, or difficulties in reading, writing, or math, circumstantial

evidence sufficient to infer deficits in adaptive functioning prior to age 22.  *See*

---

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation.  *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working."  *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings").  *Id.*  Equivalence to a listing can be either medical or functional.  *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled.  *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

*MacMillan v. Astrue*, No. 07-CV-0959, 2009 WL 8595781, at *5 (N.D.N.Y. Nov. 17, 2009), *report and recommendation adopted,* No. 1:07-CV-0959, 2009 WL 4807311 (N.D.N.Y. Dec. 7, 2009).  Courts, however, have also found that a plaintiff did not suffer from deficits in adaptive functioning where plaintiff could dress, bathe, manage money, communicate effectively, do simple math and take care of personal needs.  *See Edwards v. Astrue*, No. 5:07-CV-898, 2010 WL 3701776, at *3 (N.D.N.Y. Sept. 16, 2010).

Here, Plaintiff attended special education classes and did not complete high school.  The record indicated that Plaintiff was classified as "speech impaired" and received additional help in a "resource room" and had a shared aide.  (T. 156, 180, 183.)  However, despite Plaintiff's attendance in special education classes, substantial evidence, as outlined herein, supported the ALJ's conclusion that Plaintiff lacked the necessary deficits in adaptive functioning.  *See Orton v. Astrue*, No. 7:11-CV-630, 2013 WL 3328025, at *11 (N.D.N.Y. July 2, 2013) (although plaintiff received special education and had difficulties with reading, writing, spelling and arithmetic, substantial evidence supported the ALJ's determination that plaintiff did not have deficits in adaptive functioning because plaintiff was able to care for his children, perform household chores, and independently dress, bathe, shave and use the toilet). Ultimately, where substantial evidence supports the ALJ's determination the ALJ's finding must be sustained. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v.*

*Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Plaintiff also argues that the ALJ erred in assessing his IQ score; however, any error would be harmless because substantial evidence supported the ALJ's determination that Plaintiff did not have the requisite deficits in adaptive functioning. (Dkt. No. 18 at 11 [Pl.'s Mem. of Law].)  A reviewing court need not determine whether substantial evidence supports the ALJ's determination that a plaintiff's IQ scores were invalid, because substantial evidence supported the ALJ's determination that Plaintiff did not demonstrate limitations in adaptive functioning.  *Lawler v. Astrue*, 512 F. App'x 108, 110-111 (2d Cir. 2013).

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's step three determination be upheld because substantial evidence in the record supported the ALJ's determination that Plaintiff did not suffer from deficits in adaptive functioning.

### B.    The ALJ's Assessment of the Medical Opinion Evidence in the Record

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) .

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

The record contains two medical source statements from Plaintiff's treating mental health care providers. On November 10, 2011, Sarah Nelson, M.D., completed a medical source statement. (T. 319-321.) Therein, she opined that Plaintiff had no limitations in his ability to: understand and remember simple instructions; carry out simple instructions; and interact with co-workers. (T. 319-320.) Dr. Nelson indicated that Plaintiff was extremely limited in his ability to: make judgments on simple work-related matters; understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. (T. 319.)[3] Dr. Nelson indicated that Plaintiff had a moderate restriction in his ability to interact appropriately with supervisors and a marked restriction in his ability to respond appropriately to usual work situations and to changes in routine work setting. (T. 320.)[4] Dr. Nelson wrote that her assessments were based on the input of Plaintiff, his mother, and his grandmother. (T. 319-320.)

---

[3]    "Extreme" is defined as "[t]here is major limitation in this area. There is no useful ability to function in this area." (T. 319.)

[4]    "Moderate" is defined as "[t]here is more than a slight limitation in this area, but the individual can generally function well." (T. 319.) "Marked" is defined as "[t]here is serious limitation in this area. There is a substantial loss in the ability to effectively function." (*Id.*)

Plaintiff also received mental health care from Emmanuel Nierva, M.D.  On December 10, 2014, Dr. Nierva completed a medical source statement.  (T. 608-612.)  Dr. Nierva indicated that Plaintiff had marked limitations in his ability to: understand and remember simple instructions; and carry out simple instructions.  (T. 609.)  He indicated that Plaintiff had extreme limitations in his ability to: make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions.  (*Id.*)  Dr. Nierva indicated that Plaintiff had extreme limitations in all areas of interacting appropriately with supervisors, co-workers, and the public, as well as responding to changes in a routine work setting.  (T. 610.)

Plaintiff underwent a consultative examination on January 27, 2011.  (T. 251-254.)  During the examination, Dennis Noia, Ph.D., observed that Plaintiff was responsive and cooperative; he was appropriately dressed with good hygiene and grooming; his eye contact was appropriate; his speech was fluent, clear, and his language was moderately adequate; his thought processes were coherent and goal directed; his mood was calm; his affect was congruent; his attention and concentration were intact; his memory skills were mildly impaired; and his intellectual functioning was estimated to be in the borderline range.  (T. 252-253.)

In a medical source statement, Dr. Noia opined that Plaintiff was capable of understanding and following simple instructions and directions.  (T. 253.)  Further, he opined that Plaintiff was capable of performing simple and some complex tasks with supervision and independently, capable of maintaining attention and concentration for tasks, and capable of regularly attending to a routine and maintaining a schedule.  (*Id.*)

Dr. Noia opined that Plaintiff was capable of learning new tasks, capable of making appropriate decisions, and able to relate to and interact moderately well with others. (T. 254.) Dr. Noia stated that Plaintiff had some difficulty dealing with stress. (*Id.*)

On February 7, 2011, non-examining State agency medical consultant, L. Hoffman, Psychology, reviewed Plaintiff's record and completed a mental RFC assessment. (T. 255-271.) He stated that Plaintiff was able to understand and remember simple instructions, sustain attention and concentration for simple tasks, respond and relate adequately to others, and adapt to simple changes. (T. 271.)

On July 14, 2014, independent medical expert, Sharon Kahn, Ph.D., reviewed Plaintiff's record and provided a medical interrogatory and a medical source statement. (T. 557-564.) Dr. Kahn opined that based on the record Plaintiff had mild restrictions in activities of daily living; no restrictions in social functioning; moderate restrictions in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (T. 558.) Dr. Kahn also provided an opinion regarding whether or not Plaintiff met or equaled a Listing. (T. 559.)

Dr. Kahn opined in her medical source statement that Plaintiff had no limitations in his ability to understand, remember, and carry out simple directions. (T. 562.) Dr. Kahn opined that Plaintiff had mild limitations in his ability to make judgments on simple work-related decision. (*Id.*) She opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions. (*Id.*) Dr. Kahn indicated that she based her opinion on Dr. Noia's examination and opinion. (*Id.*)

Dr. Kahn also opined that Plaintiff had no limitations in his ability to interact appropriately with co-workers. (T. 563.) She opined that Plaintiff had mild limitations in his ability to interact appropriately with the public and moderate limitation in his ability to interact appropriately with supervisors and respond to usual work situations and to changes in a routine work setting. (*Id.*) Dr. Kahn indicated that she based her opinion on Dr. Noia's examination and opinion, as well as treatment notations from Plaintiff's treating providers, Dr. Nelson and Gregory Hooper, LCSW. (*Id.*)

In formulating his RFC determination the ALJ afforded Dr. Nelson's opinion that Plaintiff had "none" or "moderate" limitations "some weight." (T. 356.) The ALJ afforded the remainder of Dr. Nelson's opinion "limited weight." (*Id.*) In weighing Dr. Nelson's opinion the ALJ reasoned that her opinion was based on the subjective complaints of Plaintiff, his mother, and his grandmother as opposed to objective findings. (*Id.*) The ALJ also reasoned that Dr. Nelson's opinion was not consistent with Plaintiff's testimony and not supported by her own treatment notations. (*Id.*)

The ALJ also assessed the medical opinion provided by Dr. Nierva. The ALJ afforded his opinion "limited weight." (T. 357.) In affording Dr. Nierva's opinion limited weight, the ALJ stated that the opinion was contradicted by treatment notations, specifically, normal mental status examinations. (*Id.*) The ALJ also reasoned that Dr. Nierva's opinion was inconsistent with Plaintiff's testimony and not supported by objective evidence in the record regarding Plaintiff's activities of daily living. (*Id.*)

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's treating providers. Essentially, Plaintiff argues that the ALJ should have given controlling weight to the opinions of Drs. Nelson and Nierva because they were supported by the record.

(Dkt. No. 18 at 16 [Pl.'s Mem. of Law].)  Plaintiff also argues that the ALJ erred in affording more weight to the opinions of consultative examiner, Dr. Noia and non-examining consultant Dr. Kahn, over the opinions of the treating sources.  (*Id.* at 17.)[5]

Regarding the opinion of Dr. Nelson, the ALJ's determination was not the product of legal error and was supported by substantial evidence.  First, as Dr. Nelson noted on her statement, the limitations she imposed were based on the subjective statements of Plaintiff and his family members.  (T. 319.)  An ALJ is entitled to give less weight to a doctor's opinion that relies heavily on a plaintiff's subjective complaints.  *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012).

Although portions of Dr. Nelson's and Dr. Nierva's opinions were in line with each other, other substantial evidence in the record supported the ALJ's conclusion for the weight afforded to their opinions.  The ALJ's conclusion, that Dr. Nelson's treatment notations did not support her opinion that Plaintiff had marked and extreme limitations, was supported by substantial evidence.  (T.356.)  The ALJ noted that other medical evidence in the record, including Dr. Nelson's own treatment notes, did not support her opinion. *Abbott v. Colvin*, 596 F. App'x 21, 24 (2d Cir. 2015); *see Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record."); *see Veino v. Barnhart,* 312

<sup></sup>          5          Plaintiff also appears to argue that the ALJ committed legal error in his assessment of Plaintiff's credibility because the ALJ noted that an intake clerk observed that Plaintiff could answer questions without difficulty.  (Dkt. No. 18 at 17-18 [Pl.'s Mem. of Law].)  Plaintiff, however, does not argue that the ALJ erred in his credibility determination.  Here, the ALJ did not rely on the intake clerk's observations alone in making his credibility determination.  The ALJ relied heavily on observations made by Dr. Nelson and Dr. Noia as well as Plaintiff's testimony in making his credibility determination. (T. 358.)  Therefore, any error in relying on an intake analyst's observation would be harmless because there is substantial evidence in the record that supported the ALJ's determination.

F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Indeed, Dr. Nelson's treatment notations reflected that although Plaintiff had anger issues, he had "no flagrant abnormal mental status" findings. (T. 293, 294, 295, 308, 311, 314, 316, 317, 324, 325, 326, 330, 570, 572, 575, 581.)[6] Dr. Nelson's notations also indicated that Plaintiff responded well to treatment including medication and talk therapy. (T. 294, 295, 297, 300, 304, 305, 311, 314, 316, 317, 324, 325, 326, 329, 331.) Therefore, the ALJ properly afforded limited weight to Dr. Nelson's opinion that Plaintiff had "marked" and "extreme" limitations in functioning because those limitation were not supported by objective treatment observations. *See* 20 C.F.R. § 416.927(c)(2); *see Greek*, 802 F.3d at 375 (a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record).

The ALJ afforded Dr. Nierva's opinion limited weight because his opinion was not supported by his treatment notations. (T. 357.) Plaintiff began treatment with Dr. Nierva in September of 2014. (T. 587.) Dr. Nierva noted on examination in October and December of 2014 that Plaintiff was friendly, cooperative, had good eye contact, his mood was euthymic, his affect was appropriate, and his judgment and insight were intact. (T. 590.) Therefore, the ALJ properly concluded that Dr. Nierva's mental status examinations did not support his findings of "marked" and "extreme" limitations.

In formulating his RFC determination the ALJ relied on the medical source opinions of Drs. Noia, Kahn, and Hoffman. (T.355-359.) Plaintiff argues that the

---

[6] Plaintiff received mental health medication management and counseling from Dr. Nelson; however, he received this primary talk therapy from Gregory Hooper, LCSW.

opinions of non-treating, non-examining, or one-time examining physicians should not be construed to constitute substantial evidence. (Dkt. No. 18 at 18 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Overall, the ALJ did not err in failing to afford controlling weight to the opinions of Drs. Nelson and Nierva because the opinions were inconsistent with other substantial evidence in the case record. The opinions were not supported by the physician's own treatment notations which indicated normal mental status examinations and further the opinions were inconsistent with the opinions of Drs. Noia, Kahn and Hoffman. In assessing the opinion evidence in the record, the ALJ properly adhered to the treating

physician rule as outlined in 20 C.F.R. § 416.927(c)(2) and his determinations were supported by substantial evidence. The ALJ's RFC determination was supported by the opinion and examination of Dr. Noia, the opinions of Drs. Kahn and Hoffman, and to a lesser extent by Dr. Nelson's opinion. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's weighing of the medical opinion evidence be upheld.

### C. Application of the Special Technique under 20 C.F.R. § 416.920a.

In addition to the typical five-step analysis outlined in 20 C.F.R. § 416.920, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008). As the Second Circuit has explained:

> [t]his technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § [416.920a(b)(1)]. If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § [416.920a(b)(2)], which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § [416.920a(c)(3)]. According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § [416.920a(d)(1)]. If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § [416.920a(d)(2)]. If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § [416.920a(d)(3)].

*Kohler,* 546 F.3d at 265-266.

Moreover, the Regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision *'must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" *Kohler,* 546 F.3d at 266.

 "If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional areas, then the reviewing court will be unable to determine whether 'there is substantial evidence for the ALJ's conclusion that [the Plaintiff's] impairment, while severe, was not as severe as any listed disabling condition,' and the case should be remanded." *Fait v. Astrue,* No. 10-CV-5407, 2012 WL 2449939, at *5 (E.D.N.Y. June 27, 2012) (alteration in original) (quoting *Kohler,* 546 F.3d at 267-268).

Plaintiff argues that the ALJ failed to properly apply the special technique because he did not consider "the full gamut of mental health symptoms" and instead refused to acknowledge evidence favorable to Plaintiff. (Dkt. No. 18 at 19-23 [Pl.'s Mem. of Law].)

Here, at step two and three, the ALJ applied the special technique. The ALJ determined that Plaintiff had mild restriction in performing activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (T. 352.) The ALJ indicated that he relied on the opinion evidence of Dr. Hoffman in making his determination. (*Id.*) In addition, the ALJ relied on Plaintiff's testimony, Dr. Noia's opinion, and Dr. Kahn's opinion. (T. 352-353.) Further, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision."

*LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013); *see Salmini v. Comm'r Soc. Sec.,* 371 Fed.Appx. 109, 113 (2d Cir March 25, 2010).

As discussed in Part IV.B, the ALJ properly afforded weight to the medical opinion evidence in the record. Therefore, the ALJ did not err in his reliance on the opinions of Drs. Noia, Kahn and Hoffman in evaluating Plaintiff's mental impairments under the special technique. Here, the ALJ's decision clearly laid out his reasoning, specifically at step two, of his application of the special technique. The ALJ thoroughly discussed the medical opinion evidence in the record and Plaintiff's testimony. There is no indication from the ALJ's decision that he misinterpreted or misread the evidence in the record. Therefore, for the reasons stated herein and further outlined in Defendant's brief, it is recommended that the ALJ's step two determination be upheld.

### D. The ALJ's Step Five Determination

At step five in the sequential evaluation, an ALJ is required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Plaintiff argues that the ALJ erred in his step five determination because the hypothetical posed to the VE did not encompass all of Plaintiff's limitations. (Dkt. No. 18 at 23-25 [Pl.'s Mem. of Law].) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:        December 2, 2016

William B. Mitchell Carter
U.S. Magistrate Judge